# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00589-CV

**Gary Anders/Love Y. Nance, Appellants**

**v.**

**Love Y. Nance/Gary Anders, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. FM105319, HONORABLE ROSE SPECTOR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This case concerns a dispute between former husband and wife, Gary Anders and Love Y. Nance, over the meaning of "royalty interest" as it appears in a mediated settlement agreement (the Agreement) they executed prior to the entry of their divorce. The district court incorporated the Agreement into the final divorce decree. Anders appeals the part of the divorce decree ordering him to pay $50,000 to Nance pursuant to the Agreement. Nance also appeals the ruling, claiming the Agreement actually entitles her to a payment of $100,000 from Anders. At issue is the interpretation of one provision of the Agreement, in which Anders agrees to pay Nance 20% of total royalties and income received from the Advanced Marination System, a commercial food-preparation process patented by Anders and others. We will strike the portion of the divorce decree awarding Nance $50,000, modify the decree accordingly, and affirm the judgment of the district court as modified.

**BACKGROUND**

Anders and Nance filed for divorce in August 2001. While the divorce was pending, both parties agreed to mediation and in late November 2002 entered into the Agreement, which settles division of the community property and apportions tax liability. It states in relevant part:

> Furthermore, the parties agree that Love Nance will receive 20% of the total royalty interest and other income from the Advanced Marination System or any project stemming from this project, including, but not limited to, the contract with Blentech Corporation and Maritek, LLC.

The Agreement also provides that Anders pay Nance $25,000 by cashier's check no later than November 26, 2002, approximately four days after the Agreement was signed. A-K Food Technology is the corporation that Anders formed with his business partners, Dan and Marilyn King, to develop and market the Advanced Marination System. Anders and Nance, the Kings, and possibly one other person owned the corporation together.[1] Anders's and Nance's ownership interest in A-K Food Technology is listed as a community-property asset that is awarded to Anders pursuant to the Agreement.

Anders was approximately one hour late in tendering payment of the $25,000 to Nance, and on that basis she asked the district court to void the Agreement. That motion was denied. Anders moved for judgment on the Agreement, to which Nance filed two separate amended

---

[1] The record refers to both the Delaware-registered corporation "A-K Food Technology, Inc.," with Anders, Nance, the Kings, and Rodney Varner as shareholders, as well as the Texas-registered corporation, "A-K Food Technology of Arkansas, Inc.," with Anders and the Kings as shareholders. The corporate identity is not in dispute, however, so we refer to the corporation simply as "A-K Food Technology."

responses. She first argued that the Agreement was an unenforceable "agreement to agree," and secondly she asked to be awarded 20% of a $500,000 royalty advance that A-K Food Technology had received prior to the Agreement. The royalty advance had been received in five separate payments of $100,000 over a twelve-month period ending in August 2002. At a hearing on July 1, 2003, the district court entered judgment on the Agreement and awarded Nance the sum of $50,000. The district court found that Anders's interest in the $500,000 royalty receipts was community property and that Nance was entitled to 20% of the community's interest in the prior royalty payment under the terms of the Agreement. Nance had sought $100,000, but the district court concluded that she was entitled to only $50,000, apparently due to the community's partial ownership of the corporation. The next day, both parties signed a final divorce decree incorporating the judgment.

Both parties then filed petitions to modify the divorce decree. Anders argued that the Agreement addressed 20% of *future* royalties from the Advanced Marination System and did not apply to the income received over the twelve-month period prior to the Agreement—income that was no longer in the possession of either party. Nance argued that the Agreement awards her 20% of the *total* royalty and income, which can only mean she is entitled to $100,000—20% of the $500,000 received by A-K Food Technology as a royalty advance prior to the Agreement. The district court denied both petitions to modify, and both parties now advance the same positions on appeal.

**STANDARD OF REVIEW**

The issue before us is one of contract interpretation. Construction of an unambiguous contract is a question of law for the court, which we review *de novo*. *See Edwards v. Lone Star Gas Co.*, 782 S.W.2d 840, 841 (Tex. 1990); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If a

3

written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 860 (Tex. App.—Austin 2001, pet. denied). Whether a contract is ambiguous is a question of law for the court to decide. *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.) (citing *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996)). The determination of ambiguity is made by looking at the contract as a whole in light of the circumstances present at the time the contract was executed. *Miller*, 114 S.W.3d at 121. Absent a finding of ambiguity, a court will consider neither the parties' interpretations nor extraneous evidence to determine the true meaning of the instrument. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Id.* In order to ascertain the true intentions of the parties as expressed in a contract, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393. Language used by parties in a contract should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985).

## DISCUSSION

The Agreement clearly provides that, in the division of the community property, Anders shall receive all of the corporate assets of A-K Food Technology. The evidence shows that the $500,000 royalty advance was paid directly to the corporation and was a corporate asset. Anders

4

testified that the $500,000 had already been spent by the time of the mediation.[2] Among the various community-property assets listed in the schedule attached to the Agreement, there is no separate entry of a $500,000 royalty advance received either by A-K Food Technology or by Anders and Nance personally. Therefore, it is logical to conclude that the $500,000 royalty advance is not treated in the Agreement as an existing community-property asset, but as part of the total corporate assets of A-K Food Technology, the community's share of which were awarded exclusively to Anders. In fact, at oral argument, counsel for Nance conceded that previous royalty payments to A-K Food Technology would necessarily be considered corporate assets and that, under the Agreement, Anders was to receive all of the community interest in the corporate assets of A-K Food Technology. Furthermore, Nance's interpretation would necessitate that Anders pay her a lump sum of $100,000, when there is no discussion in the Agreement of how and when such an obligation was to be paid. It is unlikely that Anders and Nance would omit any specific mention of the reasonable time period or terms of payment for what would likely be the single most valuable asset of the marriage. Indeed, they took pains to clarify the time and conditions under which Anders was to pay Nance $25,000 pursuant to a separate provision of the Agreement.

Other provisions of the Agreement compel the conclusion that Nance is entitled to 20% of future payments only. In the same section that outlines the 20% payment, the Agreement reads, "The parties agree that Love Nance shall receive the royalty interest payment *directly from*

---

[2] At least one Texas court has held it to be error to divide a property interest that is no longer in existence at the time of divorce. *See Seibert v. Seibert*, 759 S.W.2d 768, 769-70 (Tex. App.—El Paso 1988, writ denied).

5

*Blentech Corporation and Maritek LLC*, or any future entities from [sic] the Advanced Marination System." (Emphasis added.) When a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous. *Trinity Indus.*, 53 S.W.3d at 860. Courts should not strain to create an ambiguity in a contract if, in doing so, they defeat the probable intentions of the parties. *Appleton v. Appleton*, 76 S.W.3d 78, 84 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Requiring Anders to pay directly to Nance $50,000 or $100,000 in royalties would create an ambiguity by directly contradicting the express language that calls for all of Nance's 20% interest to be paid to her directly from Blentech and Maritek. Such a provision seems to address royalties to be paid in the future by Blentech, Maritek, or other entities, not payments received in the past by A-K Food Technology. Any ambiguity is avoided by giving plain meaning to the language of this provision that *any* income Nance is to receive in the form of royalties will be paid to her directly by Blentech and Maritek, not by Anders or A-K Food Technology. Such payments could only be received in the future, because the prior royalty advance of $500,000 had already been received by A-K Food Technology and then apparently used to pay corporate debts and distributed to the corporate shareholders.

The provisions of the Agreement regarding income-tax liability also indicate the parties' intent to award Nance only future royalties. There is evidence that these provisions were drafted by Nance's tax attorneys after the mediation. The intent is clear that each party assume the tax liability generated by assets or income each receives under the Agreement:

> The parties agree that Love Nance shall be indemnified from any liability for state or federal taxes, income or other taxes, which might be assessed from any operations of A-K Food Technology Inc, whether assessed against the corporation, Gary Anders

6

or Love Nance.  Such indemnity shall be for any and all periods through calendar year 2002.  Nothing in this paragraph shall relieve Love Nance from any liability for income taxes relative to royalties or other income she might receive in the future from the assignment of such intellectual property or contractual rights.

We start with the premise that any royalties received are corporate assets, including the royalty advance of $500,000.  All tax liability for the operations of A-K Food Technology are to be paid by Anders; he is to indemnify Nance from any tax liability on corporate activities through calendar year 2002, whether assessed against Anders, Nance, or A-K Food Technology.  "Nothing in this paragraph," however, "shall relieve Love Nance from any liability for income taxes relative to royalties or other income she might receive in the future from the assignment" under the Agreement.  In keeping with the pattern of assessing tax liability to the spouse who receives the income or the asset generating the income, it appears the Agreement contemplated Nance's receipt of future royalties on which she would be liable for income taxes, not advance royalties received by A-K Food Technology in calendar year 2002 and before, on which Anders must pay all tax liability and indemnify Nance.  We conclude that the Agreement awards Nancy only future royalties.  Because this literal meaning can be clearly derived from the language of the contract itself, it is not ambiguous.  *See Trinity Indus.*, 53 S.W.3d at 860.  Thus, we are not required to consider the interpretations asserted by either party to determine the Agreement's true meaning.  *See National Union*, 907 S.W.2d at 520.

Because we conclude that the Agreement awards Nance only future royalties, the district court erred in awarding Nance any amount of past royalties, and we need not address whether Nance was entitled to $50,000 or $100,000.

7

## CONCLUSION

When viewed in its entirety, the Agreement clearly provides that Nance is to receive 20% of future royalty payments. Therefore, it was error for the district court to conclude that the Agreement entitled Nance to any share of past royalty payments. We strike the portion of the divorce decree awarding Nance $50,000, modify the decree accordingly, and affirm the district court's judgment as modified.

_____

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Modified and, as Modified, Affirmed

Filed:   March 18, 2004

8